COBB, Judge.
The issue on appeal is whether there was evidence before the trial court which, given the requisite inferences, precludes a summary judgment for the defendant, Saf-T-Green of Orlando, Inc. See Landers v. Milton, 370 So.2d 368 (Fla.1979). We find there was and reverse.
The plaintiff, Richard Litton, is an employee of Frank Stillman, d/b/a Stillman Painting. Stillman Painting was a subcontractor on a renovation job on the Leesburg City Hall building. In order to facilitate the job of pressure washing the building, Stillman Painting leased a self-propelled, motorized aerial platform (sometimes referred to as a “boom”) from the defendant Saf-T-Green. Litton was a passenger on the aerial platform which was being operated by Stillman when the unit rolled down a grade and struck a post, allegedly resulting in injuries to Litton.
Litton and his wife sued Saf-T-Green and its employer. Worker’s compensation benefits, although not provided by the employer, were provided by the general contractor’s carrier. The employer’s motion to dismiss was granted and that ruling is not involved in this appeal.[1]
Litton’s action against Saf-T-Green alleged that the unit was defective and/or improperly maintained and that Saf-T-Green was negligent in: (1) failing to keep the unit in proper repair; (2) providing the employer and Litton with a defective unit; and (3) failing to have warning signs on the *909 unit indicating the proper method of operation.
Saf-T-Green raised as an affirmative defense that it enjoyed immunity from suit under section 440.11, Florida Statutes and then moved for partial summary judgment asserting worker’s compensation immunity. An affidavit from Saf-T-Green’s general manager averred that it had in fact leased the unit to Stillman Painting but that Saf-T-Green did not design or manufacture the unit nor did any of its employees control or operate the unit. A copy of the written lease between Saf-T-Green and Stillman Painting, the employer, was attached to the affidavit. A manual involving the unit was also attached. The unit, which is capable of extending approximately 40 feet high, had an occupant bucket which contained operating controls. Stillman admitted by way of deposition that he was operating the bucket at the time of the accident.
According to Stillman, while he and Litton were in the bucket, he attempted to stop the bucket but the unit would not stop. Stillman stated:
I put it [the unit] in the forward position, moved a couple of feet, put it back into the neutral position, and the machine did not stop. The brakes locked, the tires locked, and it slid a few feet. As it was sliding, I knew at that point, because I had driven them before, we had used it all week long, that there was a problem. I believe that I quick, tried to put it back into reverse. It just happened so fast. It did not work, and we slid into a fence post.
Stillman estimated the boom was travelling approximately 1-3 miles per hour when it struck the post. The boom was not damaged and the fence post suffered little damage.
The trial court, following a hearing, entered summary final judgment for Saf-T-Green based on worker’s compensation immunity. Litton argues that he alleged in his complaint and adduced evidence of active negligence on the part of Saf-T-Green and that worker’s compensation law does not provide a lessor/lender with immunity from suit in such circumstances.
The preeminent case involving worker’s compensation immunity for a lessor/lender of machinery is Scott & Jobalia Constr. Co., Inc. v. Halifax Paving, Inc., 538 So.2d 76 (Fla. 5th DCA 1989), approved, 565 So.2d 1346 (Fla.1990). In that case, the lessor/lender of a crane, Halifax, was sued after one of the lessee/borrower Scott & Jobalia’s employees, Grier, was injured when a pipe fell from a sling attached to the crane.[2] Halifax settled with the injured employee and then sued Scott & Jo-balia (S & J) for common law indemnity.
On appeal, this court held that the lessor/lender was not in fact legally liable to the injured employee and thus the lessor/lender could not recover in an indemnity action against the employer for amounts it had paid to the injured employee. In approving this court’s conclusion, the supreme court explained:
This court established in Smith v. Ryder Truck Rentals, Inc., 182 So.2d 422 (Fla.1966), that a worker injured by a leased dangerous instrumentality operated by a fellow worker is limited to no more recovery than that permitted by the worker’s compensation statutes. The central rationale of Smith is that leased equipment used on a job site in effect has become the working tool of the employer. Id. at 424. Thus the exclusivity principle of worker’s compensation comes to bear. See § 440.11, Fla.Stat. (1987).
We see no reason why a different result should obtain in the present case. The only relevant differences between this case and Smith are that the dangerous instrumentality in this instance was informally borrowed, not leased, and the operator of this instrumentality was a borrowed servant, not a fellow servant. We agree with the Fifth District that these differences are not sufficient to *910 justify a different result than that in Smith. Accord Morales v. Ryder Truck Rental, 559 So.2d 317 (Fla. 3d DCA 1990).
Indeed, the central policies of worker’s compensation are to provide employees with a swift and adequate means of compensation for injury, and to insulate employers from potentially bankrupting tort liability for work-place accidents. Both of these policies are best advanced by the rule adopted by the district court below. In this case, the crane that injured Grier in effect had become one of the workplace tools of Grier’s employer. The one who operated the crane did so under the direction of S & J and its agents or employees, thus justifying the jury below in concluding that the crane operator was a borrowed servant. There is no allegation that any undisclosed defect in the crane resulted in the injury or that Halifax in any other way was responsible for a negligent act that proximately led to Grier’s injury. (Emphasis added). ⅜ * ⅜ * * *
The point of both Smith and our opinion here is that, while the third party certainly had no duty to provide worker’s compensation to the injured party, neither did the third party in any logical sense contribute to the work-place injury that actually occurred. In both logic and fairness, the injury here and in Smith was a work-place injury occurring as a result of a dangerous instrumentality in the control of the employer. This conclusion is only underscored by the fact that the jury below agreed with Halifax that any active negligence was attributable to S & J. When this is the case, the exclusive remedy is worker’s compensation.
565 So.2d at 1347-48.
In the instant case, Litton asserts that, at the very least, a factual dispute exists as to whether the cause falls within the category of cases expressly excepted from the holding in Scott & Jobalia.
The instant case is indeed distinguishable from Scott & Jobalia on this basis since in Scott & Jobalia there was no allegation that the crane itself was in any way defective or responsible for the injury to the employee. 565 So.2d at 1348. Rather, it was the “borrowed servant” who was negligent in his operation of the crane which was the sole cause of the accident. Id. Conversely, in the present case, Litton has alleged that the machinery was defective and/or improperly maintained and that Saf-T-Green was negligent in failing to keep the unit in proper repair, in providing defective machinery and in failing to indicate the proper method of operation. These first two allegations in particular assert a defect or problem in the machinery which the complaint goes on to allege was the proximate cause of the accident.
The plaintiff-employee has further adduced evidence in the form of employer Stillman’s deposition which indicates that the machine would not stop and that Still-man believed, based on his prior use of the machine, that the brakes had failed. Saf-T-Green counters that the machinery was being operated by the employer and used in the employer’s business. But these facts do not preclude this lawsuit if in fact a defect in the machinery or negligent repair was the proximate cause of the accident. Saf-T-Green further asserts that it is being sued simply because the employee’s injury occurred during the operation of the machinery by the employer, but this ignores Litton’s claims that the machinery was defective and negligently maintained/repaired.
Given the evidence in the record, this case appears ultimately to turn on a disputed issue of fact: was the cause of the accident a defect or other problem with the machinery or was it operator error? Under the former, Saf-T-Green would be liable to the employee; under the latter, Saf-T-Green would enjoy worker’s compensation immunity. This factual issue could not, however, be decided by way of summary judgment. See Landers v. Milton, 370 So.2d 368 (Fla.1979); Holl v. Talcott, 191 So.2d 40 (Fla.1966).
Finally, Saf-T-Green asserts that even assuming arguendo a defect, because it did *911 not manufacture or design the machinery, it is at most derivatively or merely technically liable for defects therein, see K-Mart. Corp. v. Chairs, Inc., 506 So.2d 7 (Fla. 5th DCA 1987), and thus could not have been actively negligent. However, if the machinery was in fact defective, the reasons for this defect could include a failure to properly maintain or repair. Liability in such a situation would be predicated on Saf-T-Green’s active negligence. Again, Litton has adduced evidence that the brakes failed to work properly. Whether this is true and whether this alleged defect was the result of inadequate or incorrect maintenance or repair are fact questions precluding summary judgment.
REVERSED.
PETERSON, J., concurs.
COWART, J., dissents without opinion.

. A subcontractor enjoys the worker’s compensation immunity from suit which a general contractor possesses. Motchkavitz v. L.C. Boggs Industries, Inc., 407 So.2d 910 (Fla.1981).

. Halifax actually loaned the crane to Scott & Jobalia at no cost. Halifax also supplied the operator of the crane but the operator’s activities were at all times controlled by Scott & Jobalia employees and the jury found that this operator became a borrowed servant of Scott & Jobalia which assumed liability for his actions.